**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| API SIGNS, LLC, | ) | Case No. 14-21635 |
| | ) | |
| Debtor. | ) | Honorable Pamela S. Hollis |
| | ) | |
| | ) | Hearing Date: June 11, 2014 at 2:00 p.m. |

**NOTICE OF MOTION**

     PLEASE TAKE NOTICE that on **June 11, 2014 at 2:00 p.m.**, or as soon thereafter as counsel may be heard, we shall appear before the Honorable Pamela S. Hollis in the courtroom usually occupied by her, Courtroom 644, in the United States Bankruptcy Court, 219 South Dearborn, Chicago, Illinois 60604, or before any judge who may be sitting in her place or stead, and shall then and there present our **American Chartered Bank's Emergency Motion (I) To Reassign Case to the Honorable Janet S. Baer; (II) To Dismiss or Convert and (III) For An Entry of an Order of Sanctions Against Counsel**, a copy of which is attached hereto and hereby served upon you, at which time and place you may appear as you see fit.

Dated: June 10, 2014                                            **AMERICAN CHARTERED BANK**


                                                                                 By:  /s/ Jordan M. Litwin
                                                                                      One of Its Attorneys

Jordan M. Litwin (ARDC No. 6287792)
MELTZER, PURTILL & STELLE LLC
300 South Wacker Drive, Suite 3500
Chicago, Illinois 60606
(312) 987-9900
(312) 987-9854 (facsimile)

# CERTIFICATE OF SERVICE

I, Jordan M. Litwin, an attorney, certify that on June 10, 2014, I caused copies of the attached **Notice of Motion** and **American Chartered Bank's Emergency Motion (I) To Reassign Case to the Honorable Janet S. Baer; (II) To Dismiss or Convert and (III) For An Entry of an Order of Sanctions Against Counsel** to be served via electronic notice on the parties appearing in the Court's CM/ECF system as noted:

## REGISTRANTS SERVED VIA CM/ECF NOTICE

- Patrick S Layng    USTPRegion11.ES.ECF@usdoj.gov
- Jordan M Litwin    jlitwin@mpslaw.com, dnichols@mpslaw.com;mpslawllc@gmail.com
- Ben L Schneider    ben@windycitylawgroup.com, mstone@windycitylawgroup.com


By: /s/ Jordan M. Litwin

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| API SIGNS, LLC, | ) | Case No. 14-21635 |
| | ) | |
| Debtor. | ) | Honorable Pamela S. Hollis |
| | ) | |
| | ) | Hearing Date: June 11, 2014 at 2:00 p.m. |

**AMERICAN CHARTERED BANK'S EMERGENCY MOTION (I) TO REASSIGN CASE TO THE HONORABLE JANET S. BAER; (II) TO DISMISS OR CONVERT AND (III) FOR AN ENTRY OF AN ORDER OF SANCTIONS AGAINST COUNSEL**

American Chartered Bank, an Illinois banking corporation ("American Chartered"), by its undersigned counsel, and pursuant to section 1112(b)(1) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), respectfully moves the Court on an emergency basis to (i) reassign the above-captioned case of API Sign, LLC (the "Debtor") to the Honorable Janet S. Baer; (ii) to dismiss or convert the above-captioned case and (iii) for enter an order for sanctions against the Debtor's attorney, Ben L. Schneider. In support of this emergency motion (the "Motion"), American Chartered states as follows:

**JURISDICTION**

1.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a) and 1112(b) of the Bankruptcy Code.

{05665: 632: 01381051.DOC : }                         1

**BACKGROUND**

*I.  Pre-Bankruptcy Filing*

2. The Debtor is a borrower under certain pre-petition loans from American Chartered. On August 31, 2010, the Debtor entered into a Promissory Note with American Chartered in the current outstanding principal amount of approximately $175,000, referenced by American Chartered as loan number 608394301 (the "LOC"). Also on August 31, 2010, the Debtor entered into a Promissory Note with American Chartered in the current outstanding principal amount of approximately $312,000, referenced by American Chartered as loan number 608394302 (the "First Term Loan"). On July 11, 2011, the Debtor entered into a Promissory Note with American Chartered in the current outstanding principal amount of approximately $13,000, referenced by American Chartered as loan number 608394303 (the "Second Term Loan" and together with the LOC and the First Term Loan, the "Loans").[1]

3. In connection with the Loans, the Debtor granted to American Chartered a first priority blanket lien on the Debtor's assets, which is fully perfected. The Loans are also evidenced and secured by certain loan agreements, guaranties, pledge agreements and related loan documents. The Loans contain cross-default provisions.

4. The Debtor defaulted under the First Term Loan on or about June 1, 2013 as a result of a payment default, and further defaulted under the First Term Loan on or about October 1, 2013 and December 1, 2013. The Debtor has also been in default under the LOC and the Second Term Loan since mid-2013 through, without limitation, cross-default provisions contained in the respective loan documents.

---

[1]  Each of the Loans are also sometimes referenced in the respective loan documents and payoff letters with the additional ending designation "-1".

II.     *The State Court Action and First Bankruptcy Filing*

5.      On March 11, 2014, American Chartered filed a Complaint in Replevin (the "Complaint") in the Circuit Court of Cook County, Illinois, initiated case no. 2014-M1-500288 (the "State Court Proceeding"). A copy of the Complaint is attached hereto as **Exhibit A**. The judge overseeing the State Court Proceeding entered an Order of Replevin (the "First Order of Replevin") granting the Complaint, a copy of which is attached hereto as **Exhibit B**.

6.      On April 2, 2014, the Cook County Sheriff executed the First Order of Replevin together with PPL Group and US Machinery Movers, all at American Chartered's cost.

7.      Shortly thereafter, clearly solely in an effort to prevent American Chartered from exercising the First Order of Replevin, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code, initiating case no. 14-12278 (the "First Bankruptcy Filing"). The First Bankruptcy Filing was assigned to the Honorable Janet S. Baer ("Judge Baer").

8.      The Debtor never sought use of cash collateral and never filed a single substantive pleading in the First Bankruptcy Filing.

9.      On May 2, 2014, American Chartered filed a Motion to Convert or Dismiss the First Bankruptcy Filing [Case No. 14-12278; Dkt. No. 18] (the "First Motion to Dismiss"). The Court granted the First Motion to Dismiss on May 7, 2014 [Case No. 14-12278; Dkt. No. 19]. At the hearing on the First Motion to Dismiss, counsel for American Chartered indicated that when American Chartered would subsequently seek to enforce its state court remedies again, the Debtor would likely file yet another bankruptcy case simply to prevent the bank from exercising its remedies against its collateral under the Loans. Judge Baer indicated that while she did not believe that a dismissal with prejudice was appropriate at that time, she warned the Debtor against refiling for such a purpose.

10.     On May 9, 2014, American Chartered filed a Motion to Modify Order of Replevin (the "Motion to Modify") in the State Court Proceeding, a copy of which is attached hereto as **Exhibit C**. On May 27, 2014, the court overseeing the State Court Proceeding entered an order (the "Second Order of Replevin") granting the Motion to Modify. A copy of the Second Order of Replevin is attached hereto as **Exhibit D**.

*III.    The Second Bankruptcy Filing*

11.     On June 10, 2014, the Cook County Sheriff executed on the Second Order of Replevin, together with PPL Group and US Machinery Movers, again at cost to American Chartered. Counsel for American Chartered warned counsel for the Debtor in writing that the filing of a second bankruptcy case for the purpose of halting the replevin action would result in American Chartered immediately moving for dismissal and sanctions.

12.     Nonetheless, also on June 10, 2014, the Debtor filed a second voluntary petition under chapter 11 of the Bankruptcy Code, initiating the above-captioned proceeding, again clearly for the sole purpose of interfering with American Chartered exercising its state court remedies against its collateral.

13.     While the First Bankruptcy Filing was assigned to Judge Baer, the above-captioned case was assigned to the Honorable Pamela S. Hollis ("Judge Hollis").

**LEGAL ANALYSIS & ARGUMENT**

*I.    Case Assignment*

14.     When a debtor who has previously filed a bankruptcy petition files for bankruptcy, the case is typically automatically assigned to the judge who presided over the prior bankruptcy case. Nonetheless, the above-captioned case has been assigned to Judge Hollis rather than to Judge Baer, who presided over the First Bankruptcy Filing. Consequently, American

Chartered respectfully asserts that it is appropriate for this case to be immediately reassigned to Judge Baer.

*II.     Dismissal*

15.  Section 1112(b)(1) of the Bankruptcy Code provides that:

> [e]xcept as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1).

16.  Section 1112(b)(4) sets forth "cause" under section 1112 of the Bankruptcy Code. Nonetheless, courts have interpreted section 1112(b)(4)'s list to be non-exhaustive. *See*, *e.g.*, *In re Draiman*, 450 B.R. 777, 826 (Bankr. N.D. Ill. 2011) ("'[c]ause' is defined in § 1112(b)(4) with a list of examples, but that list is viewed as illustrative.") (*citing In re Borges,* 440 B.R. 551, 561 (Bankr. D.N.M. 2010)); *In re Strug-Div., LLC*, 375 B.R. 445, 448 (Bankr. N.D. Ill. 2007) (same).  Further, courts in this Circuit have found that bankruptcy courts have broad discretion under section 1112(b) of the Bankruptcy Code to dismiss a Chapter 11 case for cause. *Matter of Woodbrook Assoc.*, 19 F.3d 312, 316 (7th Cir. 1994).

17.  Section 1112(b)(4)(A) of the Bankruptcy Code states as one specifically enumerated cause for conversion or dismissal, the "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). With respect to the first prong, courts have found that substantial or continuing loss to or diminution of the estate is established where a debtor maintains a negative cash flow position. *Nester v. Gateway Access Solutions, Inc. (In re Gateway Solutions, Inc.)*, 374 B.R. 556, 564 (Bankr. M.D. Pa. 2007) ("the Court looks to both the financial prospects of the Debtor

and the financial records filed with the Court"); *In re Schriock Const. Inc.*, 167 B.R. 569, 575 (Bankr. D.N.D. 1994) ("[t]his element can be satisfied by demonstrating that the debtor incurred continuing losses or maintained a negative cash flow position after the entry of the order for relief.") *In re Galvin,* 49 B.R. 665, 669 (Bankr. D.N.D. 1985) (finding that post-petition negative cash flow is considered by courts to be evidence of continuing losses).

18.  In this case, the Debtor has repeatedly shown negative cash flow. The Debtor's 2012 year-end balance sheet provided to American Chartered represents that the Debtor has been insolvent for at least 18 months. More recently, the Debtor was in an <u>overdrawn position</u> on its accounts with American Chartered <u>virtually every day in 2013</u> – these being the Debtor's primary and only operating accounts. Further, the Debtor has failed to make required payments to American Chartered, its prepetition secured lender, for approximately 11 months, which ultimately led to American Chartered executing on an order of replevin against the Debtor's equipment. This consistent non-payment alone is indicative of consistent negative cash flow, and shows that the Debtor maintained negative cash flow irrespective of debt service.

19.  With respect to the second prong of section 1112(b)(4)(A) of the Bankruptcy Code, courts have found that no reasonable likelihood of reorganization exists where the financial circumstances of a debtor lack any justification for continuing the efforts of the Chapter 11 case. *See*, *e.g.*, *In re LG Motors, Inc.*, 422 B.R. 110, 116 (Bankr. N.D. Ill. 2009) (finding that the reasonable likelihood of reorganization rests on whether the debtor's business prospects justify continuance of the reorganization effort) (*citing In re Rey*, 2006 Bankr. LEXIS 1803, 2006 WL 2457435, at *6 (Bankr. N.D. Ill. Aug. 21, 2006) *and In re Original IFPC Shareholders, Inc.*, 317 B.R. 738, 742 (Bankr. N.D. Ill. 2004)).

20. Here, the Debtor has shown no ability to present a confirmable plan of reorganization as the Debtor cannot maintain positive cash flow on a consistent basis irrespective of debt service. Courts in this Circuit have affirmed that dismissal may be appropriate at any time in a case. *See*, *e.g.*, *Matter of Woodbrook Assoc.*, 19 F.3d at 317 (rejecting debtor's claim that creditor was premature in seeking dismissal and finding that a Chapter 11 case can be dismissed at any time). The Court need not wait further before dismissal as the Debtor has already filed one bankruptcy case for an improper purpose and has now filed a second case for an improper purpose, again without any ability to reorganize and without any intention to attempt a reorganization.

21. Section 1112(b)(4)(D) states as another specifically enumerated cause for conversion or dismissal, the "unauthorized use of cash collateral substantially harmful to one or more creditors." 11 U.S.C. § 1112(b)(4)(D). Courts have found that simply the unauthorized use of a secured creditor's cash collateral without knowledge or consent constitutes substantial harm under section 1112(b)(4)(D). *See*, *e.g.*, *In re Alston*, CIV.A. 13-1855, 2013 WL 6210249 (E.D. Pa. Nov. 27, 2013) (unauthorized use of cash collateral for postpetition payments unquestionably constitutes substantial harm to all relevant creditors); *Pena v. Manfredo*, 2013 WL 4817581 (E.D. Cal. Sept. 6, 2013) (unauthorized use of $16,000 over 42 days constituted substantial harm); *In re Lo'r Decks at Calico Jacks, LLC*, 2010 WL 1965894 (Bankr. E.D.N.C. May 14, 2010) (use of a secured creditor's cash collateral without permission or authority constitutes substantial harm as it depreciates the creditor's secured position); *In re Fall*, 405 B.R. 863, 870 (Bankr. N.D. Ohio 2009) *aff'd sub nom. Fall v. Farmers & Merchants State Bank*, 2009 WL 974538 (N.D. Ohio Apr. 9, 2009) (unauthorized use of cash collateral with creditor's consent constitutes substantial harm). Other courts have found that any unauthorized use of cash

collateral that does not directly benefit the estate constitutes substantial harm to the creditor whose cash collateral is being used. *See*, *e.g.*, *In re Visicon Shareholders Trust*, 478 B.R. 292, 314 (Bankr. S.D. Ohio 2012).

22.     In the present case, Judge Baer noted at a hearing in the First Bankruptcy Filing that the Debtor likely engaged in the unauthorized use of cash collateral. There is no reason to believe that the Debtor will not continue to use cash collateral in violation of the Bankruptcy Code in this proceeding (and may well be doing so already). Any such use represents an immediate, direct and substantial harm to American Chartered. American Chartered is not currently receiving any adequate protection of its interests and the Debtor has made no attempt in either of its bankruptcy cases to offer any adequate protection.

23.     When determining whether to dismiss or convert a Chapter 11 case to Chapter 7; courts based the decision on "whichever is in the best interests of creditors and the estate…." 11 U.S.C. § 1112(b)(1). In the present case American Chartered is by far the Debtor's largest unsecured creditor and the only secured creditor. The Debtor's filings indicate that the Debtor only has 17 creditors. While American Chartered maintains claims in excess of $500,000 (the majority of which represents an unsecured claim), the Debtor's remaining creditors maintain claims totally only a small fraction of American Chartered's claims, the majority of which appear to be loans from insiders that were provided to the Debtor within the preceding month. Consequently, American Chartered's view should weigh heavily in the evaluation of what is best for creditors and the estate. While either dismissal or conversion is certainly more appropriate than allowing this case to continue as a Chapter 11 filing, American Chartered respectfully requests that this Court dismiss this case. As with the First Bankruptcy Filing, the Debtor has filed this case for no proper purpose. Conversion to a Chapter 7 case will add unnecessary

expense and delay over dismissal, but is still preferable to allowing this case to continue under Chapter 11.

24. Finally, due to the prior filing and circumstances under which the Debtor has yet again improperly filed a bankruptcy petition, American Chartered requests that the Court dismiss this case with prejudice against refiling for a period of time to prevent a third improper filing.

*III.    Sanctions*

25. Section 105(a) of the Bankruptcy Code permits the Court to enter any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a). Here, counsel for the Debtor in this case is the same law two attorney law firm that represented the Debtor in the First Bankruptcy Filing. The Debtor's counsel was present at the hearing on the Motion to Dismiss, admitted that the Debtor was not an appropriate chapter 11 debtor, and was present when Judge Baer warned against refiling simply to prevent American Chartered from exercising its state court remedies.

26. Since that time, American Chartered incurred the cost of filing a second pleading before the state court, appearing at a second hearing before the state court, contacting the Cook County Sheriff yet again, engaging PPL Group and US Machinery Movers each a second time, and certain other costs, only to face a second improper filing before this Court. Counsel for the Debtor has assisted the Debtor in two improper filings and should be sanctioned for violating this Court's verbal warning and abusing the bankruptcy process for an improper purpose.

27. The amount of sanctions sought by American Chartered Bank equals the actual costs for attorneys' fees, court costs, obtaining a second replevin bond, and engaging PPL Group and US Machinery Movers. Awarding sanctions equal to such amount is appropriate under the circumstances to discourage further abuses of the Bankruptcy Code by counsel.

{05665: 632: 01381051.DOC : }

*[Remainder of Page Left Intentionally Blank]*

{05665: 632: 01381051.DOC : }

                    Document      Page 13 of 13

WHEREFORE, American Chartered Bank requests that the Court (i) convert this case to Judge Baer; (ii) dismiss this case; (iii) enter an order for sanctions against counsel for the Debtor and (iv) grant such other and further relief as may be just and proper.

Dated this 10th day of June, 2014.

                    Respectfully submitted,

                    AMERICAN CHARTERED BANK

                    By:    /s/ Jordan M. Litwin
                             One of Its Attorneys

Jordan M. Litwin (ARDC No. 6287792)
MELTZER, PURTILL & STELLE LLC
300 South Wacker Drive, Suite 3500
Chicago, Illinois 60606
(312) 987-9900
(312) 987-9854 (facsimile)